# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CURTIS W. QUARLES**<br>**105 Dauntley Street**<br>**Upper Marlboro, Maryland 20774**<br><br>**Plaintiff,**<br><br>v.<br><br>**HOWARD UNIVERSITY**<br>**2400 6th Street, N.W., Suite 321**<br>**Washington, DC 20059**<br><br>**Serve: John G. Gloster, Jr., Esq.,**<br>**Registered Agent**<br>**2400 6th Street, N.W., Suite 321**<br>**Washington, DC 20059**<br><br>**Serve: Florence Prioleau, Esq.**<br>**General Counsel**<br>**Howard University**<br>**2400 6th Street, N.W., Suite 321**<br>**Washington, DC 20059**<br><br>**Defendant.** | **Case No.:** |

## COMPLAINT

To the Honorable Judges of said Court:

**COMES NOW**, Curtis W. Quarles ("Plaintiff," or "Sgt. Quarles"), and hereby files this action for Invasion of Privacy - False Light - and Defamation against Defendant Howard University ("HU," "Howard," or "Defendant"), and states as follows:

### The Parties

1. Sgt. Quarles served Howard with honor and distinction as a sworn

**1**

member/employee of its Department of Public Safety ("DPS") or Police Department ("HUPD") for over 42 consecutive and uninterrupted years.  Most recently, Sgt. Quarles served as the night dispatcher (11:00 p.m. - 7:00 a.m., Monday - Friday) in the HUPD Command/Communications Center located in the Howard Service Center at  2244 - 10th Street, NW, Washington, DC 20059.

2. Howard is a private Black College, chartered by an Act of Congress on March 2, 1867.  It has been identified by the U.S. Department of Education as a Historically Black College and University ("HBCU").  Howard is classified among R1: Doctoral Universities – Very high research activity and is accredited by the Middle States Commission on Higher Education.

3. At all times relevant to this action, Defendant Marcus Lyles ("Lyles" or "Chief Lyles") served as the Executive Director and Chief of Police of Howard's Department of Public Safety ("DPS" or the "HUPD").  Mr. Lyles was Sgt. Quarles' ultimate superior within HUPD and controlled HUPD in all material respects.  Mr. Lyles is an agent or employee of HU, whose actions or omissions herein were authorized, ratified or condoned by Howard University officials.

4. At all times relevant to this action, Alvin Lide, Howard's Deputy Chief of Police ("Mr. Lide"),  served as the second in charge of DPS.  Mr. Lide reported directly to Chief Lyles and is an agent or employee of Howard.  Mr. Lide's actions or omissions herein were authorized, ratified or condoned by Howard University officials, including Lyles.

5. At all times relevant to this action, Captain Orlando Dalton, Sr. of the HUPD ("Capt. Dalton" or "Dalton") served as Sgt. Quarles' first-level superior, and he is an agent or employee of Howard whose actions or omissions were authorized, ratified or condoned by Howard University officials, including Lyles.

6. At all times relevant to this action, Adiarra Lemmon is a special police officer in the HUPD ("SPO Lemmon"). Her tenure with HUPD spans two (2) years or less. SPO Lemmon is an agent or employee of Howard, whose actions or omissions were authorized, ratified or condoned by Howard University officials, including Lyles.

## Subject Matter Jurisdiction

7. Pursuant to 28 USC §1332(a)(1), this Court maintains subject matter jurisdiction over this case because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

## Venue

8. Pursuant to 28 USC § 1391(b)(1), venue is proper here because Defendant Howard resides in this judicial district.

## Facts

9. Prior to his termination by Defendant, Sgt. Quarles was highly respected within the HUPD and its greater community - on and off campus. For instance, in 2013, Sgt. Quarles was presented with a Heroic Letter of Commendation by Patrick Swiggert, then President of Howard University.

10. In 2024, Sgt. Quarles was a member of the collective bargaining unit of the Metropolitan Campus Police Officers Union. As such, his employment relationship is governed in part by a collective bargaining agreement with Howard, which requires a finding of "just cause" for termination.

11. On August 24, 2024, at 2:11:14 p.m., SPO Lemmon issued an email to Capt.

**3**

Dalton stating that she saw Sgt. Quarles urinating in the HU Service Center Garage (the "Lemmon Email"). Specifically, on August 24, 2024, Lemmon wrote:

> On today's date at approximately 0700 myself Officer Lemmon arrived at the service center, gathering my belongings at my car. Once i [sic] was finished putting my equipment on i headed over to enter the service center garage door entering the lobby when i rudely [sic] uncomfortably disturbed by SGT. C. Quarles with his trousers undone urinating inside the garage. I proceeded to ask him "why are you urinating in the garage when you just left out of dispatch" his reply being "please forgive me". Just want to add that this was very disturbing and disrespectful for me to see to coming to work and would like to report this because it's very unprofessional.

12. Dalton received the email on Saturday, August 24, 2024 and at 2:49:54 p.m. forwarded the Lemmon Email to Deputy Chief Lide, stating:

FYI

I WILL HANDLE

*(Emphasis in original)*.

13. Dalton, however, knew that Sgt. Quarles did not work on Saturday, August 24, 2024, and that Sgt. Quarles did not report to work or actually appear on HU's campus on that date. Moreover, Dalton knew Sgt. Quarles' work schedule (or had access to it), and he knew Sgt. Quarles does not work on Saturdays. Dalton knew Sgt. Quarles did not urinate in the Service Center Garage as SPO Lemmon had alleged in bad faith and to cause ill-repute upon Sgt. Quarles.

14. Knowing that her report or email was false and malicious as it related to Sgt. Quarles, on August 30, 2024, SPO Lemmon nonetheless published the Lemmon Email to: Chief Lyles, Deputy Chief Lide, SPO Keith Brown, Rosslyn Rushing (HUPD Investigator), and

Deputy Chief Lorraine Kittrell.

15. Capt. Dalton, SPO Lemmon, their sycophants (i.e., SPO Noelle Nealy), and others circulated the Lemmon Email and/or communicated its substance orally, accusing Sgt. Quarles of committing the crime of public urination widely throughout the HUPD, amongst Sgt. Quarles' peers and the staff of Howard University. None of these persons had need or reason to know of the alleged false incident and said publication was not qualifiedly privileged.

16. Under District of Columbia Criminal Code §22-1321, urinating in public constitutes "disorderly conduct," which is classified as a class one misdemeanor.

17. With the assent of Chief Lyles, Capt. Dalton conducted a formal investigation of the allegations stated in the Lemmon Email.

18. Capt. Dalton's investigation, however, was shoddy, unreliable, and violated controlling industry standards, as well as HUPD's General Order 217 (2011) or General Order 209 (2022). Capt. Dalton violated all governing internal affairs investigative protocols and industry standards in the manner in which he conducted the instant investigation.

19. Chief Lyles knew Dalton was incompetent as an internal affairs formal investigator. Chief Lyles knew Dalton lacked the knowledge, skill, and ability to conduct a proper formal internal affairs investigation. In fact, Chief Lyles knowingly violated his own General Orders 217 (2011) and 209 (2022) in permitting Dalton to investigate this matter and/or in relying on Capt. Dalton's meritless, misleading, inaccurate, and false investigative report and resultant recommendation.

20. Capt. Dalton's "Investigative Report" is dated September 3, 2024. Capt. Dalton wrongfully concluded that Sgt. Quarles urinated in the Service Center Garage as SPO Lemmon

alleged. Capt. Dalton recommended Sgt. Quarles for termination in the face of Sgt. Quarles' oral denial. Capt. Dalton made the termination recommendation, however, prior to Dalton receiving Sgt. Quarles' written Statement dated Sept. 7, 2024, vehemently denying urinating in the Service Center Garage and without having possession of any objective evidence or ruling out a third-party culprit (M. Jose Merritt) of which Dalton was aware. Dalton ignored any and all exculpatory evidence or intentionally refused to collect such evidence. Dalton allowed critical exculpatory video surveillance evidence and other reliable data to be destroyed or not preserved. Dalton's conclusions were not supported by any scientific evidence or statements under oath, affidavits, or unsworn declarations.

21. Knowing that Sgt. Quarles did not urinate in the Service Center Garage on August 24, 2024, Capt. Dalton encouraged or directed SPO Lemmon to change the date of the alleged incident to August 23, 2024 (a day that Sgt. Quarles did work) by way of an unauthenticated email that appears to be a "cut and paste." Capt. Dalton did this on or about August 30, 2024. However, in his Investigative Report, Capt. Dalton remained mute about SPO Lemmon's gross inconsistency regarding the date of the alleged incident. Dalton assumed no effort to reconcile SPO Lemmon's conflicting alleged incident dates and merely demurred and attempted to secrete the stark inconsistency. Dalton withheld and never told Sgt. Quarles of SPO Lemmon's alleged incident date conflict, knowing that the same would constitute exculpatory evidence.

22. Pursuant to HU's General Order 217 (2011) or General Order 209 (2022), Chief Lyles or Capt. Dalton had the right to direct Sgt. Quarles to submit to a polygraph examination, or be subject to a charge of insubordination for refusal. However, Chief Lyles and Capt. Dalton intentionally disregarded said General Orders and did not ask Sgt. Quarles to submit to a

**6**

polygraph examination before a certified polygrapher.

23. Use of a polygraph in this case, where the facts as amassed by Dalton essentially boiled down to Sgt. Quarles' denial against SPO Lemmon's specious, conflicting allegation, is consistent with industry standards for internal affairs investigations.

24. In his September 26, 2024, request that Sgt. Quarles to appear for an investigative interview, Capt. Dalton deprived Sgt. Quarles of his right to have counsel accompany Sgt. Quarles at the interview. The right to counsel at the investigative interview is mandated by both General Order 217 (2011) or General Order 209 (2022). Dalton otherwise violated the mandates of the said General Orders.

24. On August 17, 2025, expert witness Chief David L. Perry (Ret.) (a former campus chief of police at various major universities) opined in writing to a reasonable degree of certainty that Capt. Dalton's Investigative Report is "grossly unreliable by industry standards and simply does not support the termination of Sgt. Quarles."

25. Nevertheless, on October 22, 2024, by an unsigned letter, Chief Lyles rubber-stamped Capt. Dalton's termination recommendation and authorized Dalton and Howard University to terminate Sgt. Quarles' 42-year career with HUPD.

26. On August 14, 2025, Sgt. Quarles independently submitted to a polygraph examination before a certified, seasoned, and expert polygrapher, Jeremiah Hanafin.

27. On August 15, 2025, Mr. Hanafin certified in his report that Sgt. Quarles successfully passed the polygraph examination with the result of: "NO DECEPTION INDICATED." (Emphasis in original).

28. The actions and/or omissions aforestated of Defendant by and through its

7

authorized agents or employees, namely: Chief Lyles, Dep. Chief Lide, Capt. Dalton, SPO Lemmon and SPO Neally are defamatory.

29. All conditions precedent to filing this action have been satisfied by Sgt. Quarles.

## COUNT I - INVASION OF PRIVACY - FALSE LIGHT

30. Sgt. Quarles realleges each and every allegation contained in paragraphs Nos. 1 - 29 above.

31. Sgt. Quarles is a private person.

32. Sgt. Quarles did not consent to the issuance or circulation of the Lemmon Email or the substance thereof to any person.

33. The statements in Lemmon Email, the substance thereof and/or the oral iteration thereof are knowingly false, recklessly made and/or designed to publicly place Sgt. Quarles in a false light because the statements create the false or negative impression that, *inter alia*: (a) Sgt. Quarles committed a crime of urinating in public; (b) Sgt. Quarles engaged in immoral conduct, or conduct otherwise unbecoming of a member of the HUPD.  Said false statements caused Sgt. Quarles to appear odious, infamous or ridiculous within his workplace, community and before the public.

34. Defendant by and through the actions or omissions of its agents or employees aforestated are malicious and spiteful, and they caused Sgt. Quarles to be terminated from his 42-year employment with Howard, where his integrity was beyond reproach.

35. The actions and/or omissions of Defendant by and through its agents or employees, namely: Chief Lyles, Dep. Chief Lide, Capt. Dalton, SPO Lemmon and SPO Neally, and others are not privileged as they had no right to place Sgt. Quarles before the public in a false or

misleading light and/or in such a manner as to intentionally, maliciously or with reckless disregard for the truth create the false or negative impression of Sgt. Quarles.

36. As a direct and proximate result of the Defendant's intentional misconduct, by and through its agents or employees stated above, Sgt. Quarles has suffered pecuniary and nonpecuniary damages (including physical pain and suffering, embarrassment, humiliation, loss of enjoyment of life, and injury to reputation).

37. Whereas once Sgt. Quarles was highly respected; now, he is not and is being treated as an outcast or pariah due to Defendant's actions and omissions as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF, CURTIS W. QUARLES, prays for judgment and/or decree as follows, jointly and severally, against DEFENDANT HOWARD UNIVERSITY:

A. For compensatory damages of not less than $3,000,000.00, or according to proof, plus prejudgment and postjudgment interest from the date of said violations;

B. For punitive damages of not less than $500,000.00, or according to proof, plus prejudgment and postjudgment interest from the date of said violations;

C. For such other and further relief as this Court deems just, meet and proper.

## COUNT II - DEFAMATION

38. Sgt. Quarles realleges each and every allegation contained in paragraphs Nos. 1 - 37 above.

39. Sgt. Quarles is a private person.

40. Sgt. Quarles did not consent to the issuance or circulation of the Lemmon Email or the substance thereof to any person.

41. The statements in Lemmon Email, the substance thereof and/or the oral iteration thereof are knowingly false, recklessly made and/or designed to publicly place Sgt. Quarles in a false light because the statements create the false or negative impression that, *inter alia*: (a) Sgt. Quarles committed a crime of urinating in public; (b) Sgt. Quarles engaged in immoral conduct, or conduct otherwise unbecoming of a member of the HUPD. Said false statements caused Sgt. Quarles to appear odious, infamous or ridiculous within his workplace, community and before the public.

42. Defendant's agents or employees' actions, omissions, and statements aforestated are malicious, spiteful and false, and they caused Sgt. Quarles to be terminated from his 42 year employment with Howard, where his integrity was beyond reproach.

43. The actions and/or omissions of Defendant by and through its authorized agents or employees, namely: Chief Lyles, Dep. Chief Lide, Capt. Dalton, SPO Lemmon, and SPO Neally, and others are not privileged as they had no right to place Sgt. Quarles before the public in a false or misleading light and/or in such a manner as to intentionally, maliciously or with reckless disregard for the truth create the false or negative impression of Sgt. Quarles.

44. As a direct and proximate result of the Defendant's intentional misconduct, by and through its agents or employees stated above, Sgt. Quarles has suffered pecuniary and nonpecuniary damages (including physical pain and suffering, embarrassment, humiliation, loss of enjoyment of life, and injury to reputation).

45. Whereas once Sgt. Quarles was highly respected; now, he is not and is being treated as an outcast or pariah due to Defendant's actions and omissions as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF, CURTIS W. QUARLES, prays for judgment and/or decree as follows, jointly and severally, against DEFENDANT HOWARD UNIVERSITY:

A. For compensatory damages of not less than $3,000,000.00, or according to proof, plus prejudgment and postjudgment interest from the date of said violations;

B. For punitive damages of not less than $500,000.00, or according to proof, plus prejudgment and postjudgment interest from the date of said violations;

C. For such other and further relief as this Court deems just, meet and proper.

## **JURY DEMAND**

A jury trial is hereby demanded.

**Curtis W. Quarles**
**By Counsel**

**BAKER SIMMONS**
**Attorneys at Law**
**800 Connecticut Avenue, N.W., Suite 300**
**Washington, D.C. 20006**
**Telephone: 202.775.0050  Facsimile: 202.204.5784**
baker@bakersimmonslaw.com; richardcbaker@aol.com
https://bakersimmonslaw.com/

By: */s/Richard Carnell Baker*
Richard Carnell Baker, DC Bar No. 451190 and VA Bar No.28854
Amana Thompson Simmons, MD and VA Bar No.:41901

Dated: August 22, 2025

**11**